No. 17,168.

PEOPLE EX REL. DUNBAR, ATTORNEY GENERAL ET AL. *v.* SCHAEFER ADMINISTRATRIX.
(268 P. [2d] 420)

Decided March 22, 1954.

Mr. DUKE W. DUNBAR, Attorney General, Mr. H. LAW-RENCE HINKLEY, Deputy, Mr. NEIL TASHER, Assistant, for plaintiffs in error.

Mr. BARKLEY L. CLANAHAN, for defendant in error.

*En Banc.*

MR. JUSTICE MOORE, delivered the opinion of the court.

WE will herein refer to plaintiff in error as commissioner, and to defendant in error as administratrix.

Walter J. Schaefer, a resident of Adams county, died April 3, 1950, and Tonie Paulina Schaefer was appointed administratrix of his estate. In the report made by the inheritance tax commissioner, filed in the probate court, he assessed the administratrix as a niece of said deceased, thus classifying. her as a Class C beneficiary under section 14, chapter 85, '35 C.S.A., as amended (See S.L. '41, c. 146). She filed objections to the report on the ground that she had been classified as a niece when in fact she was entitled to the classification of a daughter, and to the exemptions and tax rates applicable to a child by adoption. The trial court sustained her objection and entered judgment accordingly. The commission, seeking a reversal of this judgment, brings the case here by writ of error.

It appears without contradiction that the administratrix was born April 28, 1896; that in August, 1923, she came to live with her uncle, the deceased, and his wife; and that from said date to the time of her uncle's death she had no means of support other than that provided by deceased. December 30, 1940, by a decree of adoption issued out of the county court of Adams county, she was declared to be the adopted daughter of Walter J. Schaefer and Myrna Schaefer. The adoptive mother predeceased the adoptive father.

The statutory provisions pertinent in this case are contained in section 14, chapter 85, '35 C.S.A., as amended by chapter 146, S.L. '41, which imposes a graduated rate of tax upon inheritance by dividing beneficiaries into classes. Class A is subject to the lowest rate of tax and includes a "Father, mother, husband, wife, child or any child or children legally adopted as such, * * *." The portion of the statute which forms the basis of this controversy is as follows: "Provided, however, that for the purpose of this act no person shall be considered legally adopted unless the adoption decree was entered prior to such person reaching the age of twenty-one (21) years." If the administratrix is subject to the payment of inheritance tax as a daughter, the amount payable is approximately $10,000.00 less than it would be if she were taxed as a niece.

Counsel for the administratrix relies upon the opinion of our Court in the case of *Hogan, Exrx. v. People, ex rel.,* 120 Colo. 581, 212 P. (2d) 863, and asserts that the identical question was considered in that case, and that the doctrine of stare decisis is applicable. The commissioner argues that our opinion in the Hogan case contains language which necessarily excludes application of the rule of stare decisis to the instant case, and that under well-established canons of construction in cases involving the constitutionality of statutes, the proviso here in question should be upheld, notwithstanding our opinion in *Hogan v. People, supra.*

Question to be Determined.

█ *Does a statute, which divides adopted children into two classes, and provides for a higher rate of tax on inheritances where the beneficiary thereof was adopted after attaining the age of twenty-one years, than the rate of tax applicable where the beneficiary was adopted prior to attainment of that age, unjustly discriminate against the adult adoptee so as to amount to special legislation in violation of section 25, article V of the Constitution of Colorado; or does such act offend against article XIV, section 1, of the Constitution of the United States, which provides that no state shall, "Deny to any person within its jurisdiction the equal protection of the laws."?*

We answer the question in the negative. The instant case has made necessary a revaluation of our opinion in *Hogan v. People, supra,* in the light of the very thorough presentation that has here been made by counsel for both sides on the important questions involved. In *Hogan v. People, supra,* it is clear that we reached a conclusion that is out 'of harmony with the views expressed in the present opinion. However it is equally true that in that case we placed definite limitations upon the effect which should be given that opinion as a precedent in other cases. In view of the argument, and authorities to which our attention has been directed for the first time in this action, we now conclude that our opinion in *Hogan v. People, supra,* is out of harmony with the great weight of authority and should not be followed. Accordingly, we now overrule the opinion in that case and adopt in lieu thereof the views set forth herein for the guidance of those whose interests may be affected.

█ It is fundamental that, subject to constitutional limitations, the legislature may make any classification of the recipients of inherited estates for purposes of taxation which it sees fit, and that courts may not interfere, provided there is the required equality and uniformity between the persons in the separate classes, and provided further, that the classification is not unreasonable or

arbitrary and in fact has sanction in reason and logic. An exhaustive review of authorities and a discussion of applicable principles may be found in the opinion of the Supreme Court of South Dakota in the case of *In Re McKennan's Estate*, 27 S.D. 136, 130 N.W. 33.

The purpose of the statute under consideration unquestionably is to prevent avoidance of inheritance taxes by the device of adoption proceedings through which a stranger becomes an "adopted child," even though an adult person, and thus avoids substantial liability for inheritance taxes which otherwise would be collectible. We are impressed with the reasoning of the Supreme Court of Vermont in the case of *In Re Estate of Hagar*, 98 Vt. 235, 126 Atl. 507, where the identical question received a thorough analysis. From that opinion we quote the following:

"It logically follows that strangers in blood, having no moral claim whatever based on kinship, may be legally placed in a class by themselves, even though by adoption they are given the status, as between the parties, of natural children. And, manifestly, if the adoption does not take place until after the adoptee has attained the age of majority the reason for distinguishing between him and natural children is even greater. A child adopted during minority, especially if of a tender age, ordinarily becomes a member of the adoptive parents' family in a very real sense. If he receives the care and nurture due him and gives in return the honor and obedience to be expected, there develops mutual feelings of consideration and affection akin to those that exist between the parent and the natural child. In fact, all the rights and duties incident to the relation of parent and child exist between such child and its adoptive parents. As the scion becomes part of the tree upon which it is grafted so the child, adopted in early life, becomes part of the family into which he is received.

"The situation is entirely different in the case of one adopted after attaining the age of majority, after he has

become 'his own man,' so to speak, at liberty to go when and where he chooses, and seldom becoming a member of the adoptive parents' family in the real sense of the term. Ordinarily such adoptions are dictated wholly, or in a very large measure, by financial considerations.

"We think the classification in the present statute 'has sanction in reason' abundantly sufficient to meet all constitutional requirements."

 Bearing in mind the very reasonable basis for the classification of adopted children into two groups, which appears in the foregoing quotation, and the purpose of the statute to prevent avoidance of taxes, we apply fundamental rules of construction governing the interpretation of statutes when their constitutionality is challenged. These well-established rules are concisely stated in *Allen v. Bailey,* 91 Colo. 260, 14 P. (2d) 1087, as follows: "The defendants are the ones who argue that the act is unconstitutional, and the burden is upon them to demonstrate it. Where practicable, the statute will be construed so as to avoid conflict with the federal Constitution. *Pine Martin Mining Co. v. Empire Zinc Co.,* 90 Colo. 529, 537, 11 P. (2d) 221. The good faith of the legislature will be presumed. *People v. Morgan,* 79 Colo. 504, 507, 246 Pac. 1024; *Minnesota v. Barber,* 136 U.S. 313, 10 Sup. Ct. 862, 34 L.Ed. 455; *New Mexico v. Denver & Rio Grande R. R. Co.,* 203 U.S. 38, 55, 27 Sup. Ct. 1, 51 L.Ed. 78. The statute will be sustained if possible. *People v. Morgan, supra; Reid v. Colorado,* 187 U.S. 137, 153, 23 Sup. Ct. 92, 47 L.Ed. 108. And the courts will not declare a legislative act unconstitutional unless it is clearly apparent that it is such. *Reichelt v. Julesburg,* 90 Colo. 258, 268, 8 P. (2d) 708. *Mayor v. Shattuck,* 90 Colo. 104, 110, 34 Pac. 947."

 With reference to the rule of stare decisis upon which the administratrix relies, suffice it to say that this is not the first time, nor will it be the last, in which we, for definite and valid reasons, have felt obligated to overrule a former decision. Our Court, in *Calhoun Gold Mining Co. v. Ajax Gold Mining Co.,* 27 Colo. 1, 59 Pac. 607,

said: "Courts are not bound to perpetuate errors merely upon the ground that a previous erroneous decision has been rendered on a given question. If it is wrong, it should not be continued, unless it has been so long the rule of action, and relied upon to such an extent, that greater injustice and injury will result by a reversal, though wrong, than to observe and follow it."

The powers and duties of the court, with relation to the rule of stare decisis, are discussed under varying circumstances in the following cases: *Imperial Securities Co. v. Morris*, 57 Colo. 194, 141 Pac. 1160; *People ex rel. v. Le Fevre*, 21 Colo. 218, 40 Pac. 882; *Wolf v. People*, 117 Colo. 279, 187 P. (2d) 926; *Mountain States Telephone and Telegraph Company v. City and County of Denver*, 125 Colo. 167, 243 P. (2d) 397.

The judgment is reversed and the cause remanded with direction to enter judgment consistent with the views herein expressed.

MR. JUSTICE HOLLAND dissents.